S. Peter Serrano
United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA  99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 03, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) 2:25-CR-0053-TOR |
| v. | ) |
| GREG LAVERN WILSON, | ) PLEA AGREEMENT |
| Defendant. | ) |

Plaintiff United States of America, by and through S. Peter Serrano, United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, GREG LAVERN WILSON ("Defendant"), both individually and by and through Defendant's counsel, Bryan Whitaker, agree to the following Plea Agreement:

1.   Guilty Plea and Maximum Statutory Penalties:

Defendant agrees to enter a plea of guilty to Count 1 of the Indictment charging Defendant with Possession with Intent to Distribute 50 Grams or More of Actual (Pure) Methamphetamine and 400 Grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), (vi), a Class A felony.

Defendant stipulates and agrees he has a prior "serious drug felony" conviction pursuant to 21 U.S.C. § 802(58), as alleged in the Indictment. Defendant understands the following potential penalties apply:

PLEA AGREEMENT - 1

  a. a term of imprisonment of not less than 15 years but not more than life;

  b. a term of supervised release of not less than 10 years and up to a life term;

  c. a fine of up to $20,000,000; and

  d. a $100 special penalty assessment.

Defendant waives any further notice pursuant to 21 U.S.C. § 851.

2. <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

  a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

  b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

  c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>Denial of Federal Benefits</u>:

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or

PLEA AGREEMENT - 2

benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4. <u>Potential Immigration Consequences of Guilty Plea</u>:

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. <u>The Court is Not a Party to the Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 3

   c.   the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

   d.   the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

   e.   the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

   f.   the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

6. Waiver of Constitutional Rights:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

   a.   The right to a jury trial;

   b.   The right to see, hear and question the witnesses;

   c.   The right to remain silent at trial;

   d.   The right to testify at trial; and

   e.   The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7. Elements of the Offense:

The United States and Defendant agree that to convict Defendant of Possession with Intent to Distribute 50 Grams or More of Actual (Pure) Methamphetamine and

PLEA AGREEMENT - 4

400 Grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), (vi), the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on or about March 30, 2025, in the Eastern District of Washington, Defendant, knowingly possessed a mixture or substance containing a detectable amount of fentanyl or methamphetamine;
>
> Second, Defendant possessed that methamphetamine or fentanyl with the intent to distribute it to another person to another person; and
>
> *Third*, the methamphetamine contained more than 50 grams of actual (pure) methamphetamine or the mixture or substance containing fentanyl weighed more than 400 grams.

8. <u>Statement of Facts and Stipulation</u>:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea, it does not contain all facts which could be proven by the United States.

*June 2023 Investigation & Search Warrant*

In June 2023, the Moses Lake Police Department ("MLPD") Street Crimes Unit obtained a state warrant stemming from a drug trafficking investigation into Defendant, Greg Lavern WILSON ("WILSON") to search WILSON's residence

PLEA AGREEMENT - 5

located at 9360 Beacon Rd in Moses Lake, Washington stemming from a drug trafficking investigation into WILSON's distribution of multiple types of controlled substances out of his residence.

On June 22, 2023, MLPD and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") executed the search warrant on WILSON's residence. During the search of WILSON's bedroom, MLPD and ATF located approximately 5 grams of methamphetamine in a nightstand along with two small digital scales with methamphetamine residue on them. In the bedroom closet, they found approximately 4.3 grams of methamphetamine in plastic bags in a small black and blue Kobalt tool type bag that was on a shelf in the closet. On another shelf in this closet was a SCCY 9mm pistol, which was later determined to have no firing pin, such that it was unable to be fired. Leaning in the corner of the closet was a 12-gauge shotgun. On another shelf in this closet was approximately $489.00 in U.S. Currency $1 bills. In a spare bedroom they located 5 vials of anabolic steroids in a fishing-type bag. In this spare bedroom there was also an opening into the attic space. In the attic space was a Walmart bag which contained approximately $71,650 in cash. WILSON was ultimately arrested, and when he was searched incident to arrest, he had approximately $1,442.00 in his pants pocket along with seven plastic bags that matched bags found in the Kobalt bag in WILSON's bedroom closet. The seized methamphetamine was sent to the Washington State Patrol Crime Laboratory and was confirmed to be methamphetamine (Exhibits: 23MLE1760, 23MLE1768).

In the days following the warrant service, multiple individuals advised MLPD missed a significant quantity of methamphetamine and fentanyl pills in the residence which was in a hidden in a compartment in the bathroom in the residence.

WILSON's cellular phone was also seized and a supplemental state search warrant obtained to search the phone for the date range of April 1, 2023, to June 22, 2023. A review of the context of the cell phone revealed WILSON was communicating with others to obtain and distribute methamphetamine and fentanyl

PLEA AGREEMENT - 6

pills. For example, WILSON requested "13 of those little ones" is referring to 13 "boats" of fentanyl pills (*i.e.* 13,000 pills) and was negotiating a price of $700 per 1,000 pills and asking for a discount due to bulk purchase. In a subsequent conversation, WILSON was looking to obtain approximately 15,000 fentanyl pills, 4 ounces of heroin, and 4 ounces of fentanyl powder.

WILSON was charged in state court and was released on bond.

*Continued Investigation & Search Warrant*

After WILSON bonded out on his state charge, multiple cooperating defendants ("CDS") advised WILSON was their source of supply for methamphetamine and fentanyl and usually they would obtain those drugs from WILSON at his residence. The CDs generally advised WILSON obtained his drugs from a source in the Yakima, Washington area and typically obtains "a couple" boats of pills, a couple ounces of fentanyl powder, and a pound of methamphetamine per trip to Yakima. A GPS vehicle tracker was placed on WILSON's vehicle pursuant to a search warrant.

In late March 2025, ATF obtained a search warrant for WILSON's residence, vehicle, and person. On March 31, 2025, a traffic stop was conducted on WILSON's vehicle when he was returned to Grant County from the Yakima area. WILSON was the driver and sole occupant of the vehicle. When WILSON was advised that agents had a warrant to search his person and vehicle, WILSON stated something to the effect of "well, it's about time you caught me".

WILSON then provided a post-*Miranda* statement wherein he stated that he was a drug addict who sells drugs to make money. He stated there was a large amount of drugs in his vehicle that he had just obtained from Yakima. He stated there was over 1 pound of methamphetamine, more than 1,000 fentanyl pills and over a quarter pound of fentanyl powder and described with particularity where the drugs were located. ATF executed the search warrant on the vehicle and located the approximate amount / type of drugs where WILSON said they would be located. On his person, ATF located about $2,200 in U.S. Currency. The seized substances were sent to the

PLEA AGREEMENT - 7

Drug Enforcement Administration Laboratory for analysis and were determined to be a total of approximately 407.4 grams of fentanyl and approximately 602.6 grams of actual (pure) methamphetamine. One baggie of fentanyl also contained xylazine.

WILSON stipulates and agrees that he possessed more than 50 grams of actual (pure) methamphetamine and more than 400 grams of a mixture or substance containing fentanyl with the intent to distribute it to others.

9. The United States Agrees:

    a. *Not to File Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment, Superseding Indictment, Information, or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

    b. *Dismissal of Remaining Counts of the Indictment*:

At the time of sentencing, the United States agrees to dismiss the remaining counts of the Indictment unless Defendant breaches this Plea Agreement before sentencing.

10. United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

    a. *Base Offense Level and Relevant Conduct*:

The United States and Defendant agree and stipulate more than 30,000 kilograms but less than 90,000 kilograms of converted drug weight was possessed with the intent to distribute, distributed, and attempted to be distributed by Defendant and this Defendant's relevant conduct for sentencing purposes should be calculated

PLEA AGREEMENT - 8

based upon this amount, pursuant to USSG §1B1.3. Therefore, the United States and Defendant agree and stipulate that, his base offense level is 36. *See* USSG §2D1.1(a)(5), (c)(2); USSG §1B1.3(a).

      b.    *Specific Offense Characteristics*:

The United States and Defendant agree to recommend a 2-level enhancement for possession of a dangerous weapon in connection to the offense. *See* USSG §2D1.1(b)(1).

The United States and Defendant agree to recommend no other specific offense characteristics apply. *See generally* USSG §2D1.1(b).

      c.    *Role Adjustments*:

The United States and Defendant agree to recommend no role adjustment applies. *See* USSG §§3B1.1; 3B1.2.

      d.    *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is

PLEA AGREEMENT - 9

charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

   e. *Agreements Regarding Representations to the Court*:

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

Regarding all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

   i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

   ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

   iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

   iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

   v. The United States and Defendant may each respond to any arguments presented by the other;

PLEA AGREEMENT - 10

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix. Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

PLEA AGREEMENT - 11

f.  *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

g.  *Criminal History*:

The United States and the Defendant have made no agreement and make no representations as to the Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigative Report is completed.

11.  Length of Incarceration[1]:

The United States and Defendant agree to recommend a 180-month term of incarceration.

12.  Supervised Release:

The United States and Defendant each agree to recommend 10 years of supervised release. Defendant agrees that the Court's decision regarding the

---

[1] At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

PLEA AGREEMENT - 12

conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a. that Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs, but not to exceed six non-treatment drug tests per month during the imposed term of supervised release; and

    b. that Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

13. <u>Criminal Fine</u>:

The United States and Defendant agree to recommend the Court impose no criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment per count of conviction to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013.

15. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by

PLEA AGREEMENT - 13

participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal and Collateral Attack Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives his right to appeal his conviction and/or sentence.

Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

PLEA AGREEMENT - 14

  b.  the United States may prosecute Defendant on all available charges;

  c.  the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

  d.  the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

PLEA AGREEMENT - 15

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

S. Peter Serrano
United States Attorney

_____    12/3/25
Caitlin Baunsgard                         Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____    12/3/25
GREG LAVERN WILSON                Date
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____    12/8/25
Bryan Whitaker                         Date
Attorney for the Defendant

PLEA AGREEMENT - 16